***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing parties have not shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby modifies the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and in a pre-trial agreement as:
 *********** STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the Defendant-Employer regularly employing three or more employees at all times pertinent hereto.
2. The employer-employee relationship existed between plaintiff-employee and Defendant-Employer.
3. The employer is self-insured. The servicing agent is Key Risk Management Services.
4. The average weekly wage was $565.78 yielding a comp rate of $377.21 a week.
5. The date of the alleged injury by accident was June 23, 1999.
6. The parties agreed to stipulate to the following: Pre-Trial Agreement, Medical Records stipulated as Document No. 1, Industrial Commission Forms stipulated as Document No. 2, and Personnel File stipulated as Document No. 3.
7. The depositions of Dr. Bruce V. Darden, Dr. Richard C. Avioli and Dr. Lee Beatty were taken and have been received into the record.
8. Plaintiff continues to receive and has received since his layoff of July 20, 2000, the amount of $182.20 per week as temporary partial disability benefits.
 ***********
Based upon all of the competent and credible evidence of the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable back injury on 23 June 1999 while employed as a shop mechanic for Mt. Holly Spinning. The workers' compensation servicing agent, Key Risk Management Services, executed a Form 60 admitting plaintiff's right to compensation at a weekly compensation rate of $377.21.
2. Temporary total disability benefits were paid to the plaintiff from 1 July 1999 at various times, until such time as plaintiff returned to work for Mt. Holly Spinning on 5 April 2000.
3. Upon return to work, plaintiff was paid temporary partial disability benefits by the defendant based upon the rate of two-thirds (2/3) of the difference of plaintiff's pre-injury average weekly wage and his return to work wage.
4. Plaintiff was treated by Drs. Kenneth Wood and Bruce Darden of Charlotte Orthopaedic Specialists. Dr. Wood performed a microdiskectomy at L3-4 on 4 October 1999, and Dr. Darden maintained follow-up care of the Plaintiff after Dr. Wood left the Charlotte Orthopaedic Specialists practice.
5. Plaintiff continued to work for Mt. Holly Spinning until his job was eliminated on 20 July 2000. The job elimination was part of a generalized layoff at Mt. Holly Spinning and was not related to plaintiff's injury.
6. At the time of the layoff, plaintiff was receiving temporary partial disability benefits in the amount of $182.20. He has continued to receive that amount weekly since the layoff.
7. On September 15, 2000, an FCE was performed which showed plaintiff was capable of working light classification with occasional (1 to 4 times per hour) lifting of 16 pounds from floor to knuckle and 26 pounds from knuckle to shoulder.
8. On 3 October 2000, Dr. Darden found plaintiff at maximum medical improvement and issued a 15% permanent partial disability rating. Dr. Darden testified that he believed that plaintiff was capable of performing work that was more strenuous than the results of his FCE evaluation, however would defer to the results of the FCE. Dr. Darden stated that plaintiff was capable of performing the work that he did for defendant-employer before the general lay-off or other work within his work restrictions without causing further injury to his back.
9. Pursuant to plaintiff's right to a second opinion for purposes of his disability rating, Dr. Richard Avioli opined that the 15% permanent partial disability rating set by Dr. Darden was reasonable.
10. Shortly before the deputy commissioner hearing defendant started vocational rehabilitation services for the plaintiff. Plaintiff also testified that he has undertaken some vocational efforts on his own. As of the date of the evidentiary hearing, plaintiff had not successfully located employment. On June 18, 2001, defendant filed a motion to suspend temporary partial disability benefits pursuant to Section 97-25 of the Act because plaintiff refused to continue with participation with vocational efforts. On May 17, 2001, Scott W. Roberts, attorney for plaintiff, wrote the vocational counselor, Stephanie Mitchell, and stated:
 "Mr. Williams has been awarded Social Security disability. He will not be participating in vocational rehabilitation any longer unless ordered by the Commission."
The vocational case manager, Stephanie Mitchell, reported that plaintiff failed to keep his scheduled appointment for May 22, 2001, and that she closed her file on May 31, 2001. The evidence before the Commission, however, does not support a conclusion that plaintiff is not employable as a result of his compensable injury or that further vocational efforts would not be fruitful.
11. Plaintiff contends that his wages while on light duty, prior to the general lay-off, do not establish his capacity to earn wages. The Full Commission agrees that this employment does not establish plaintiff's earning capacity. This employment, however, is evidence that plaintiff is not totally disabled. Further, plaintiff was earning a higher hourly wage and was progressing toward his normal number of work hours per week at the time that he was laid off; thus, his diminution in earnings prior to reaching maximum medical improvement is not relevant evidence of his abilities upon reaching MMI. Plaintiff's post-injury work history is consistent with the FCE results and testimony of Dr. Darden and establishes that he has the physical capability of performing some work; however, because this employment was before he reached maximum medical improvement and the employment no longer continues, it does not establish the extent of his disability, if any, in the competitive work environment. Plaintiff's earnings prior to the lay-off is the only evidence to suggest the value of plaintiff's alleged diminished earning capacity. Therefore, because this employment is not evidence of his earning capacity at MMI, there is no evidence in the record to determine that plaintiff has a diminished earning capacity as a result of his compensable injury.
12. Dr. Beatty, plaintiff's primary care physician, began treating plaintiff for depression on October 26, 2000. This diagnosis was based on an interview by Dr. Beatty, a Family Practitioner, with plaintiff and his wife. Plaintiff was not referred to a psychologist or a psychiatrist and did not have any psychological testing or counseling for this condition.
13. Although plaintiff had many stressors, including the loss of his mother and the lay-off from work, Dr. Beatty opined that Plaintiff's depression was caused by his chronic back pain condition that was a result of his compensable injury by accident. Based on the greater weight of the competent evidence, the Full Commission finds that plaintiff's injury and his chronic back pain was a contributing factor to his depression.
14. Dr. Beatty prescribed Prozac for plaintiff and in Dr. Beatty's opinion this improved plaintiff's psychological condition. Plaintiff was last seen by Dr. Beatty on December 28, 2000. Plaintiff cancelled his next scheduled appointment and had not rescheduled an appointment as of March 28, 2001, when Dr. Beatty was deposed in this action. No evidence was offered that plaintiff's depression was disabling. Plaintiff testified at the Deputy Commissioner hearing that he believed this condition "is right now." The Full Commission finds that plaintiff's depression was controlled with medication and plaintiff had received no further medical attention for this condition after December 28, 2000.
15. Dr. Beatty speculated that he did not believe that plaintiff would be able to return to gainful employment because of his back injury. Dr. Beatty, however, was not treating plaintiff for his back injury, did not have relevant medical records concerning plaintiff's treatment for this condition, was not aware that plaintiff had a FCE, was not aware that plaintiff had returned to work after his spinal surgery, and was not aware that plaintiff had demonstrated positive Waddell signs. In addition, Dr. Beatty testified that he would defer to Dr. Darden, Dr. Wood, and to Dr. Avioli, if he is board certified in orthopaedic surgery, as to their opinions concerning disability. The Full Commission, therefore, gives greater weight to the opinions of Dr. Darden and Dr. Avioli, and to plaintiff's FCE results, in deciding the issue of plaintiff's disability. The testimony of Dr. Darden, the FCE evaluation, and plaintiff's work history prior to the general layoff establish that plaintiff has the capacity to work.
16. Based on the competent medical evidence of record, the Full Commission finds that plaintiff reached maximum medical improvement on October 3, 2000, with a 15% impairment rating as found by Dr. Darden, and that plaintiff was able to work in accordance with the functional capacity examination (FCE). The Commission also finds that plaintiff unilaterally refused vocational assistance provided by defendant effective May 17, 2001. Although plaintiff has established that he sustained an injury, he has not established that he has disability, or the amount of his disability after he refused vocational assistance on May 17, 2001. At the time of plaintiff's lay-off, plaintiff was increasing his hours of work and had received an increase in his hourly wage. The Full Commission agrees with plaintiff that his period of work for defendant-employer did not establish earning capacity; however, no other evidence was provided to establish plaintiff's incapacity to earn his pre-injury wages. As established by the FCE, plaintiff's employment prior to termination, and Dr. Darden's testimony, plaintiff is not physically or mentally incapable of any form of work. Plaintiff testified that he has been provided with some job leads by a vocational counselor and that he has not obtained a job offer. Plaintiff, however, did not describe the efforts that he has made to obtain employment and has not presented evidence in sufficient detail to allow the Commission to conclude that he will not successfully obtain employment. Plaintiff voluntarily refused to continue vocational counseling on May 17, 2001. Therefore, a complete review of the evidence does not establish that plaintiff has sustained a diminution in earning capacity as a result of his injury. Consequently, the evidence fails to establish plaintiff's disability after he reached maximum medical improvement and his refusal to comply with defendant's efforts to present him at maximum vocational improvement.
 ***********
Based upon the foregoing, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his low back from a specific traumatic event as established by the evidence and the Form 60.See G.S. § 97-2(6).
2. Plaintiff was temporarily and totally disabled from his lay-off from work on 20 July 2000 until he reached maximum medical improvement on 3 October 2000. G.S. § 97-29. Plaintiff had not reached maximum vocational improvement on 3 October 2000 and defendant provided vocational assistance starting in December 2000. On 17 May 2001 plaintiff unjustifiably refused continued vocational rehabilitation. Plaintiff is entitled to receive total temporary disability benefits from 20 July 2000 through 17 May 2001 when he voluntarily removed himself from the labor market.
3. Because this is a Form 60 case, the burden to establish continuing disability was on plaintiff. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, review denied, 353 N.C. 729,550 S.E.2d 782 (2001). Plaintiff has failed to establish that he is disabled during the period after he reached maximum medical improvement when he refused to continue with vocational rehabilitation on 17 May 2001. The employee can meet his burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a result of the compensable injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions; i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russellv. Lowes Prod. Dist., 108 N.C. App. 762, 425 S.E.2d 454 (1993). The FCE and medical testimony of Dr. Darden negate the first element of theLowes test. Plaintiff has failed to establish the nature and extent of his attempts to find work sufficient to allow the Commission to conclude that he has made a reasonable effort but has not and will not be able to secure employment as required for the second Lowes element. Further, plaintiff has not established that it would be futile for him to look for employment. And finally, after reaching MMI, plaintiff has not been employed and plaintiff contends that his wages for his post-injury light duty position at defendant-employer cannot be considered for determining partial disability; therefore plaintiff has not met his burden to establish a partial disability under the fourth Lowes' element. Plaintiff has voluntarily ceased to accept vocational rehabilitation provided by defendant. Plaintiff, therefore, has failed to meet his burden to present evidence to establish disability after he reached maximum medical improvement, and more importantly after he ceased vocational rehabilitation on 17 May 2001.
4. Plaintiff reached maximum medical improvement on 3 October 2000, and is presumed to have reached maximum vocational improvement with his voluntary refusal to continue with vocational rehabilitation on May 17, 2001. Plaintiff has a 15% impairment to his back for which he is entitled to receive 45 weeks of benefits at the rate of $377.21 per week. G.S. § 97-31(23). Plaintiff is entitled to receive the greater of benefits awarded under Sections 97-29, 97-30, or 97-31, and considering that plaintiff has not established total or partial disability after he reached maximum vocational improvement, he is presumed to elect benefits under Section 97-31. See Gupton v. Builders Transport, 320 N.C. 38,357 S.E.2d 674 (1987).
5. Plaintiff's depression was caused, at least in part, by his chronic back pain. The past treatment by Dr. Lee Beatty is approved for this condition. Plaintiff continues to be entitled to receive reasonable and necessary medical care for his compensable low back injury, subject to the limitations of Section 97-25.1. G.S. § 97-25.
6. Defendant has provided continuing temporary partial disability benefits at the rate of $182.20 per week which Defendant may credit toward the benefits that plaintiff is entitled to receive.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff, subject to attorney's fees awarded below: (1) total disability compensation at the rate of $377.21 per week from 20 July 2000 through 3 October 2000, and (2) an additional 45 weeks of benefits at the rate of $377.21 per week for the 15% impairment rating to plaintiff's back. Defendants are entitled to a credit against this recovery for all sums paid to plaintiff for partial disability after 3 October 2000.
2. Defendant shall also pay all medical expenses, including past medical treatment by plaintiff's physician for his depression, and treatment for back pain for so long as said treatment tends to effect a cure, give relief or lessens plaintiff's period of disability, subject to the limitations of G.S. 97-25.1.
3. Plaintiff's counsel is entitled to receive 25% of the indemnity benefits paid to plaintiff, and Defendant is ordered to withhold this sum from the payments, if any, due to plaintiff in response to Award No. 1, and pay this sum directly to plaintiff's counsel.
4. Defendant shall pay the costs (subject to Rule 7(c) of the N.C. Industrial Commission Rules for Mediated Settlement Neutral Evaluation Conferences), including an expert witness fee of $250.00 to Dr. Lee Beatty and $325.00 to Dr. Richard Avioli.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER